UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LUSHER SITE REMEDIATION GROUP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-03785-JRS-DLP |
| | ) | |
| NATIONAL FIRE INSURANCE COM-PANY OF HARTFORD, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## Entry and Order

Plaintiff Lusher Site Remediation Group (the "Group") filed a Complaint in the
Marion County Superior Commercial Court against Defendant insurance companies
(collectively "Defendant Insurers"). The Group seeks damages and a declaratory
judgment that Defendant Insurers have a duty to indemnify Sturgis Iron & Metal
Co., Inc. ("Sturgis") under comprehensive general liability primary, excess, and um-
brella insurance policies issued by Defendant Insurers to Sturgis for claims asserted
by the Group against Sturgis in a lawsuit pending in the United States District Court
for the Northern District of Indiana, Cause No. 3:18-cv-00506 (the "Underlying Law-
suit"). Defendants, The Travelers Indemnity Company ("Travelers"), as successor to
Gulf Insurance Company, and St. Paul Fire and Marine Insurance Company ("St.
Paul") have filed a Motion to Enforce Prior Judgment and Dismiss the Amended Com-
plaint Pursuant to Rule 12(b)(6) (ECF No. 136.) Travelers and St. Paul have moved
for oral argument on their Motion to Enforce Prior Judgment. (ECF No. 138.)

Defendant Everest National Insurance Company ("Everest") also has filed a Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6) (ECF No. 141.) Other Defendants, National Fire Insurance Company of Hartford ("National Fire"), Transportation, Citizens Insurance Company of America ("Citizens"), Employers Insurance Co. of Wausau ("Employers"), ACE American Insurance Co. ("ACE"), Amerisure Mutual Insurance Co. ("Amerisure"), Evanston Insurance Co. ("Evanston"), and Liberty Mutual Insurance Co. ("Liberty") have joined in the Motion to Enforce Prior Judgment.[1]  In joining the Motion to Enforce Prior Judgment, Amerisure offered alternative grounds for dismissal.

## I.     Background

On November 5, 2018, the Group filed a Complaint in the Marion County Superior Commercial Court against several Defendants.  The complaint seeks damages and a declaratory judgment that the Defendant Insurers have a duty to indemnify Sturgis under comprehensive general liability primary, excess, and umbrella insurance policies issued by Defendants to Sturgis for claims asserted by the Group against Sturgis in the Underlying Lawsuit.  Defendants removed this action to this district court, invoking the Court's diversity jurisdiction.  *See* 28 U.S.C. § 1332.  The Group moved to remand, and that motion was denied.

The Group's Amended Complaint "seeks damages for environmental testing and cleanup costs it has already incurred, and a judgment declaring that the Defendant

---

[1] Defendant Ohio Casualty Insurance Co. did not join in the Motion to Enforce Prior Judgment.

Insurers have a duty to indemnify their policyholder Sturgis . . . under comprehensive general liability . . . insurance policies against environmental liabilities arising from Sturgis'[s] ownership of and operations at its property in Elkhart, Indiana (the 'Sturgis Property')." (Am. Compl. ¶ 1, ECF No. 133.)

In *Lusher Site Remediation Group v. Sturgis Iron & Metal Co., et al.*, Case No. 3:18-cv-00506 (N.D. Ind.), the Group is seeking to hold Sturgis and others liable under CERCLA and other statutes for damages to the soil and groundwater at the Lusher Site, approximately 870 acres of property that consists of a contaminated groundwater plume located in Elkhart, Indiana. (Am. Compl. ¶¶ 18–19, 31–33, ECF No. 133.) The Group alleges that it has incurred and will continue to incur major environmental testing and cleanup costs associated with Sturgis' contamination of the Lusher Site. (*Id.* ¶ 32, ECF No. 133.)

In the instant action, the Group alleges that Sturgis purchased from Defendant Insurers insurance policies that provide coverage for Sturgis's liability relating to Sturgis's property and the Lusher Site. (*Id.* ¶ 34, ECF No. 133.) The Group seeks a declaration that each policy provides coverage for Sturgis's liability for the contamination Sturgis caused at the Lusher Site and the Group's claims against Sturgis. (*Id.* ¶¶ 34, 46, ECF No. 133.) In addition, the Group seeks a declaration "that the Defendant Insurers are obligated to provide insurance coverage, subject to their respective policy limits, for Sturgis'[s] environmental liabilities arising from the Sturgis Property." (*Id.* ¶ 49; *see also id.* ¶ 51, ECF No. 133.)

*The Michigan Action*

On November 8, 2018, Amerisure and other insurers, ACE, Citizens, Employers, Evanston, Everest, Granite State Insurance Company, Liberty, National Fire, Ohio Casualty Insurance Company ("Ohio Casualty"), St. Paul, Transportation Insurance Company, and Travelers, as successor to Gulf Insurance Company, filed a Complaint for Declaratory Relief against Sturgis, Case No. 2018-169816-CB in the Circuit Court for the County of Oakland in the State of Michigan (the "Michigan Action").[2] (Mot. Enforce J., Ex. A, ECF No. 136-1.) The insurers sought a declaration "that they neither have a duty to defend nor to indemnify Defendant Sturgis under insurance policies that they issued, or allegedly issued (the 'Policies' as identified in paragraphs 18 – 29 and 31 – 45 below), in relation to environmental pollution sites where Sturgis has been informed it may be potentially liable as a result of its historical operations." (ECF No. 136-1 at ¶ 1.) Sturgis failed to plead or otherwise defend the Michigan Action.

On December 4, 2018, counsel for Amerisure wrote a letter to the Group's counsel in connection with the Underlying Lawsuit in the Northern District of Indiana and this instant action. (ECF No. 148-3 at 15–16.) The letter advised that on November 8, 2018, the insurers had commenced the Michigan Action against Sturgis, *Amerisure Mutual Insurance Company, et al. v. Sturgis Iron and Metal Co., Inc.*, Case No. 2018-169816-CB (Mich. Cir. Ct. Oakland Cty.). (*Id.* at 16.) The Group acknowledges that

---

[2] These are the very same insurance companies who are Defendants in the instant action. However, Granite States Insurance Co., who had been a Defendant, is no longer a party to this case because it has been dismissed. (ECF No. 162, ECF No. 163.)

it had notice of the Michigan Action as of November 20, 2018. (Mot. Enforce J., Ex. B, ECF No. 136-2 at 6 ("The Group did not learn of this case until November 20, 2018.").) The letter to the Group's counsel also indicated that the summons and complaint had been personally served on an officer of Sturgis on November 12, 2018. (ECF No. 148-3 at 16.) The letter further advised that "[s]hould your clients wish to be heard in connection with these matters at issue in the Oakland County Action, they may . . . seek to intervene in that case." (*Id.*)

Defendants requested a clerk's entry of default, and on December 19, 2018, the Clerk of the Oakland County Circuit entered the default of Sturgis. (ECF No. 136-4.) Later that same day, the Group filed an appearance and a Motion to Intervene, seeking leave to intervene and claiming an interest "that is not adequately represented by any existing party" and in order to protect its rights. (ECF No. 136-2 at 1.) On December 27, 2018, counsel for the plaintiff insurers wrote counsel for the Group, indicating that the insurers had no objection to the motion to intervene. (Resp. Mot. Intervene, Br. Supp. Resp. Opp'n Mot. Enforce J., Ex. 2 at 1, ECF No. 148-3.) The Group did not notice the Motion to Intervene for hearing. The insurers' counsel's letter advised that under "MCR 2.209(C)(2) . . . the motion to intervene is, [to] 'be accompanied by a pleading stating the claim or defense for which intervention is sought'" and that the motion "'requires supplementation to provide the form of pleading that you intend to file in the event the Court grants the motion.'" (*Id.*)

Notice that the default had been entered was served on Sturgis, and on January 10, 2019, the plaintiff insurers filed proof of service and a copy of the Notice with the

Circuit Court. (Mot. Enforce J., Ex. C, ECF No. 136-3.) Proof of service was served

on the Group that same day. On January 25, 2019, the insurers filed Plaintiffs' Mo-

tion for Default Judgment Against Sturgis Iron and Metal Co., Inc. pursuant to MCR

2.603(B). (Mot. Enforce J., Ex D, ECF No. 136-4.) The Motion for Default Judgment

was served on the Group. On January 25, 2019, the insurers filed a Notice of Hearing

on their Motion for Default Judgment, with a hearing date of February 6, 2019. (*Id.*,

Ex D, ECF No. 136-4 at 19.) The Group's counsel inadvertently overlooked that the

Motion for Default Judgment had been set for hearing. (Lusher Remediation Group's

Br. Supp. Mot. Set Aside Default J., 5 n.1, ECF No. 148-4; *see also* ECF No. 148-3 at

54.)

On February 7, 2019, the Oakland County Circuit Court entered a Default Judg-

ment Against Sturgis Iron and Metal Co., Inc. in the Michigan Action. The Circuit

Court ordered the following:

> (1) the Environmental Matters (as defined in Plaintiffs' Motion [to in-
> clude *Lusher Site Remediation Group v. Sturgis Iron & Metal Co.,
> Inc.,* Case No. 3:18-cv-00506 (N.D. Ind.) (the Underlying Lawsuit)
> and the instant action, *Lusher Site Remediation Group. v. Nat'l Fire
> Ins. Co. of Hartford, et al.*, Cause No. 1:18-cv-03785-JRS-DLP (S.D.
> Ind.) *see* ECF No. 136-4 at 7–9] do not fall within the insuring agree-
> ments of the Policies (as defined in Plaintiffs' Motion) [identified in
> paragraphs 18–29 and 31–45 of the Complaint in the Michigan Ac-
> tion[3]];

[3] For a period of October 1, 1994 to October 1, 1995, National Fire issued a general liability policy (131190825) to Sturgis. For a period of October 1, 1995 to October 1, 1996, National Fire issued a general liability policy (131190825) to Sturgis. For a period of October 1, 1996 to October 1, 1997, National Fire issued a general liability policy (131190825) to Sturgis. For a period of October 1, 1997 to October 1, 1998, National Fire issued a general liability policy (131190825) to Sturgis. For a period of October 1, 1998 to October 1, 1999 (cancelled July 15, 1999), National Fire issued a general liability policy (L131190825) to Sturgis. For a period of July 15, 1999 to July 15,

(2) Sturgis [Iron and Metal Co., Inc.] breached the conditions in the Policies [the policies issued, or allegedly issued by the plaintiff insurers (ECF No. 136-4)] for the Environmental Matters;

(3) the Environmental Matters are excluded under the Policies' pollution exclusions and expected or intended exclusions;

(4) there is no coverage for the Environmental Matters under the [Employers Insurance Company of] Wausau Environmental Coverage (as defined in Plaintiffs' Motion); and

(5) Plaintiffs are entitled to a declaratory judgment that there is no coverage for Sturgis under the Policies for the MDEQ Claim, the Lusher

---

2000, Citizens issued a general liability policy (O1CMP 0505182001) to Sturgis. For a period of July 15, 2000 to July 15, 2001, Employers issued a general liability policy (0821-00-010721) to Sturgis. For a period of July 15, 2004 to July 15, 2005, ACE issued a general liability policy (D35975111) to Sturgis. For a period of July 15, 2005 to July 15, 2006, Liberty issued a general liability policy (TB2141435690035) to Sturgis. For a period of July 15, 2006 to July 15, 2007, Liberty issued a general liability policy (TB2141435690036) to Sturgis. For a period of July 15, 2007 to April 3, 2008, Amerisure issued a general liability policy (CPP2046809000000) to Sturgis. For a period of April 4, 2008 to July 15, 2008, Amerisure issued a general liability policy (CPP22053522000000) to Sturgis. For a period of July 15, 2000 to July 15, 2001, Ohio Casualty is alleged to have issued a general liability policy to Sturgis. For a period of July 15, 2001 to July 15, 2004, Granite State is alleged to have issued general liability policies to Sturgis. For a period of October 1, 1994 to October 1, 1995, Transportation issued an umbrella policy (131190811) to Sturgis. For a period of October 1, 1995 to October 1, 1996, Transportation issued an umbrella policy (131190811) to Sturgis. For a period of October 1, 1996 to October 1, 1997, Transportation issued an umbrella policy (131190811) to Sturgis. For a period of October 1, 1997 to October 1, 1998, Transportation issued an umbrella general liability (131190811) to Sturgis. For a period of October 1, 1998 to October 1, 1999, Transportation issued an umbrella general liability policy (131190811) to Sturgis. For a period of July 15, 1999 to July 15, 2000, Gulf issued an excess generally liability policy (CU043828) to Sturgis. For a period of July 15, 2000 to July 15, 2001, Gulf issued an excess general liability policy (CU0600096) to Sturgis. For a period of July 15, 2004 to July 15, 2005, St. Paul issued a specialty commercial umbrella liability policy (QK01200785) to Sturgis. For a period of July 15, 2005 to July 15, 2006, St. Paul issued a specialty commercial umbrella liability policy (QKO1300034) to Sturgis. For a period of May 24, 2006 to July 15, 2006, St. Paul issued a specialty commercial umbrella liability policy (QK01300174) to Sturgis. For a period of July 15, 2006 to July 15, 2007, Everest issued an excess general liability policy (71G6000009-061) to Sturgis. For a period of July 15, 2007 to July 15, 2008, Everest issued an excess general liability policy (71G6000009-071) to Sturgis. For a period of July 15, 2007 to July 15, 2008, Evanston issued an excess general liability policy (XOGA258107) to Sturgis. (Compl. Declaratory Relief, Mot. Enforce J., Ex. A, ECF No. 136-1.)

Group Action, and the Indiana Lawsuit (as all terms are defined in Plaintiffs' Motion) [defined to include the Underlying Lawsuit and this action].

(Order Entering Default J. 2, Mot. Enforce J., Ex. E, ECF No. 136-5.) On March 6, 2019, the Oakland County Circuit Court granted the Group's Motion to Intervene and denied the Group's Motion to Set Aside Default. (Ex. F, ECF No. 136-6.) The Group did not appeal the Default Judgment or the denial of its Motion to Set Aside Default.

## II.    Discussion

The Defendant Insurers argue that the Group's claims against them in this action are barred by res judicata and waiver. The Group responds that under Michigan law, which is applicable here, a default judgment against a policyholder has no preclusive effect against an injured third-party. The Group further responds that it has not waived any of its claims.

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff." *Parungao v. Cmty. Health Sys., Inc.* 858 F.3d 452, 457 (7th Cir. 2017) (affirming district court's dismissal of complaint based on res judicata). Although "district courts ordinarily should not dismiss a complaint based on an affirmative defense such as res judicata[,] . . . when it is 'clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law,' dismissal is appropriate." *Id.* (footnote omitted) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)); *see also Watkins v. United States*, 854 F.3d 947, 949–51 (7th Cir. 2017) (ruling that district court could

8

take judicial notice of earlier state-court complaint and thereby dismiss based on an affirmative defense). "Courts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned." *Parungao*, 858 F.3d at 457. This Court takes judicial notice of the certified public records from the Michigan Action, including the judgment, all orders, and the transcript of the March 6, 2019 motion hearing.

"The effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment." *In re Catt*, 368 F.3d 789, 790–91 (7th Cir. 2004) (citing 28 U.S.C. § 1738; *Stephan v. Rocky Mountain Chocolate Factory, Inc.,* 136 F.3d 1134, 1136 (7th Cir. 1998)). Thus, Michigan law determines the effect of the Default Judgment entered against Sturgis in the Michigan Action.[4]

Res judicata prevents "multiple suits litigating the same cause of action." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). Under Michigan law, "res judicata 'bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.'" *Id.* The Michigan Supreme Court takes a broad view of res judicata, "holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

"Res judicata applies to default judgments and consent judgments as well as to judgments derived from contested trials." *Schwartz v. City of Flint*, 466 N.W.2d 357,

---

[4] Lusher has raised no challenge to whether the Default Judgment was rendered in a proceeding that comported with due process of law.

359–60 (Mich. Ct. App. 1991); *see also Williams v. Twp. of Waterford*, Case No. 18-12319, 2019 WL 6999745, at *5 (E.D. Mich. Oct. 31, 2019) (stating that a "default judgment is considered a final judgment on the merits"). "A default judgment is just as conclusive an adjudication and as binding upon the parties . . . as one which has been rendered following answer and contest. As is true with a judgment on the merits, a default judgment will bar a second suit between the same parties and their privies on the same cause of action." *Perry & Derrick Co. v. King*, 180 N.W.2d 483, 485–86, 24 Mich. App. 616, 620 (Mich. Ct. App. 1970). It makes no difference that the first action to reach a final judgment was the second action filed; instead, "'it is the first final judgment rendered . . . which becomes conclusive in the other as res judicata.'" *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1228 (6th Cir. 1981) (quoting *Chi., R.I. & P.R. Co. v. Schendel*, 270 U.S. 611, 616–17 (1926)).

The Michigan Action was decided on the merits. The Default Judgment resolved the question of whether there was insurance coverage for the Environmental Matters under the policies issued by the insurers. The Oakland County Circuit Court declared that "there is no coverage for Sturgis under the Policies" for either the Underlying Lawsuit or the instant action. (ECF No. 156-5.) The Group cites *Rogers v. J.B. Hunt Transportation, Inc.*, 649 N.W.2d 23, 27 (Mich. 2002), for the proposition that "defaults and default judgments are not favored in the law" and are not decisions on the merits. *Rogers*, however, does not address preclusion.

Both the Michigan Action and the instant action involve the same parties or their privies. The same insurers that were plaintiffs in the Michigan Action are

Defendants in this action. And the Group, the Plaintiff here, moved to intervene in the Michigan Action and was granted leave to intervene in that action on March 6, 2019, making it a party to that action, and the Group is therefore bound by the Default Judgment entered against Sturgis. *See,* e.g*., City of Grand Rapids v. Consumers' Power Co.*, 185 N.W. 852, 854 (Mich. 1921) ("In the case of intervention, the intervener becomes a party to the litigation, and is bound by the judgment . . . ."); *Eyde v. Charter Twp. of Meridian*, 324 N.W.2d 775, 778 (Mich. Ct. App. 1982) ("Once permitted to intervene, whether as of right or by leave, the [intervenors] were parties to the action and bound by the judgment.").

The Group argues that the Default Judgment is not res judicata as to the Group because the Group did not intervene until after the Default Judgment was entered. But the Group's authorities do not support that position, and the Michigan Supreme Court has taken a contrary view. A century ago that court said that an intervenor "is bound by the judgment . . . [and] he must, of course, take the case as he finds it, and cannot question the propriety of the proceedings." *City of Grand Rapids*, 185 N.W. at 854. It appears that the timing of the Group's intervention was driven at least in part by the Group's inaction in failing to notice its motion to intervene for a hearing as required by the Circuit Court. *See* MCR 2.119(B). In addition, the Circuit Court rules require that a motion to intervene "be accompanied by a pleading stating the claim or defense for which intervention is sought." MCR 2.209(C)(2). The Group does not dispute the Defendant Insurers' representation that the Group's motion to intervene was not accompanied by a pleading. Once the Group noticed its unopposed

motion to intervene for hearing, it was heard, and the Group was granted leave to intervene. The Group is bound by the Default Judgment. But even if the timing of the Group's intervention prevents application of res judicata, as discussed below, collateral estoppel applies to bar the Group's claims in the instant action.

Finally, the matters in this instant action were, or could have been, resolved in the Michigan Action. The Group's Amended Complaint seeks a declaration that each insurance policy identified in that complaint provides coverage for the contamination at the Lusher Site and the Group's claims against Sturgis, and that the Defendant Insurers "are obligated to provide insurance coverage, subject to their respective policy limits, for Sturgis'[s] environmental liabilities arising from the Sturgis Property." (Am. Compl. ¶¶ 34, 46, 49, 51, ECF No. 133.)[5] That matter was already decided against coverage for Sturgis in the Michigan Action.

_____

[5] The Amended Complaint alleges that National Fire sold at least the following policies to Sturgis: a. A1 31190825, providing CGL coverage from 10/1/1994–10/1/1995; b. C1 31190825, providing CGL coverage from 10/1/1995–10/1/1996; c. C1 31190825, providing CGL coverage from 10/1/1996–10/1/1997; d. C1 31190825, providing CGL coverage from 10/1/1997–10/1/1998; and e. L1 31190825, providing CGL coverage from 10/1/1998–7/15/1999. It alleges that Transportation sold at least the following policies to Sturgis: a. A1 31190811, providing umbrella coverage from 10/1/1994–10/1/1995; b. C1 31190811, providing umbrella coverage from 10/1/1995–10/1/1996; C1 31190811, providing umbrella coverage from 10/1/1996–10/1/1997; d. C1 31190811, providing umbrella coverage from 10/1/1997–10/1/1998; and e. C1 31190811, providing umbrella coverage from 10/1/1998–10/1/1999; that Citizens sold at least one CGL policy, 01 CMP 0505182 01, to Sturgis providing coverage from 7/15/1999–7/15/2000; that Travelers [successor in interest to Gulf] sold at least the following policies to Sturgis: a. CU0438218, providing excess liability coverage from 7/15/1999–7/15/2000; and b. CU0600096, providing excess liability coverage from 7/15/2000–7/15/2001; that Employers sold at least one CGL policy to Sturgis, 0821-00-010721, providing coverage from 7/15/2000–7/15/2001; that ACE sold at least one CGL policy to Sturgis, D3 59 75 11 1, providing coverage from 7/15/2004–7/15/2005; that Liberty Mutual sold at least the following CGL policies to Sturgis: a. TB2-141-435690-035, providing coverage from 7/15/2005–7/15/2006; b. TB2-141-435690-036, providing coverage from 7/15/2006–7/15/2007; that St. Paul sold at least the following policies to Sturgis: a. QK01200785, providing umbrella liability coverage from 7/15/2004–7/15/2005; b. QK01300034, providing umbrella liability coverage from 7/15/2005–

Furthermore, the Michigan Supreme Court takes a broad view of res judicata, "holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 680 N.W.2d at 396. "The test for determining whether two claims arise out of the same transaction and are identical for res judicata purposes is whether the same facts or evidence is essential to the maintenance of the two actions." *Schwartz v. City of Flint*, 466 N.W.2d 357, 360 (Mich. Ct. App. 1991).

The facts and evidence essential to the Group's claims against the Defendant Insurers in the instant action are the same facts and evidence essential to the Insurers' claims against Sturgis in the Michigan Action—facts and evidence regarding whether the Insurers' policies at issue provide coverage for Sturgis with respect to the Lusher Site. Therefore, the claims arise out of the same transaction, and are identical for res judicata purposes.

The Group could have raised its claims asserted here in the Michigan Action, but it did not because it waited until after the Default Judgment was entered against Sturgis to notice its motion to intervene for a hearing. Had the Group noticed its motion sooner—and the Group acknowledges that it had notice of the Michigan

7/15/2006; c. QI01300174, providing umbrella liability coverage from 5/24/2006–7/15/2006, Everest sold at least the following excess liability policies to Sturgis: a. 71G6000009-071, providing coverage from 7/15/2006–7/15/2007; and b. 71G6000009-071, providing coverage from 7/15/2007–7/15/2008; that Amerisure sold at least the following policies to Sturgis: a. CPP2046809000000, providing CGL coverage from 7/15/2007–4/4/2008; and b. CPP2053522000000, providing CGL coverage from 4/4/2008–7/15/2008; that Evanston sold at least the following policy to Sturgis: a. XOGA258107, providing excess liability coverage from 7/15/2007–7/15/2008. (Am. Compl. ¶¶ 35–45, ECF No. 133.) It is further alleged that "[a]ll of these policies provide coverage for the contamination Sturgis caused at the Lusher Site." (Am. Compl. ¶ 46, ECF No. 133.)

Action as of November 20, 2018 (Mot. Enforce J., Ex. B, ECF No. 136-2 at 6)—its unopposed motion to intervene likely would have been granted, and the Group could have asserted its interest in the case and raised its alleged right to coverage under the policies. In the exercise of reasonable diligence, the Group could have intervened before the Default Judgment was entered against Sturgis and defended against the declaratory judgment action despite Sturgis's default. *See Allstate Ins. Co. v. Hayes*, 499 N.W.2d 743, 750 (Mich. 1993) (holding that where the injured party is a named defendant in the insurer's action for declaratory judgment, a default by the insured will not prevent the injured party from litigating the coverage question); *see also id.* at 751 n.20 (observing that a default "'does not bind a codefendant who appears and contests the litigation'") (quoting *Klimmer v. Klimmer*, 238 N.W.2d 586, 587 (Mich. Ct. App. 1975)). Had the Group intervened in time to litigate coverage, the Group may not have been bound by the default judgment. Even if the Group had not yet been granted leave to intervene, but appeared at the hearing on the motion for default judgment, it could have raised its arguments then. The Group had been given proper notice of the default hearing, but failed to attend that hearing.

The Group argues that under *Allstate Ins. Co. v. Hayes*, a default judgment against a policyholder does not bind injured third parties. *Hayes* does not stand for such a broad proposition. *Hayes* was a declaratory judgment action by an insurer against the insured and the injured third party. The issue presented and decided in *Hayes* was whether an injured party, "as a joined defendant, has standing in a declaratory judgment action instituted by the insurer to pursue the action to a final

14

coverage determination." *Id.* at 746. The Michigan Supreme Court held that "the default judgment entered against the insured does not bind the injured party." *Id.* at 743. The fact that the injured party was a named defendant was important. *Id.* at 746, 748, 751 (noting that the court's authority to declare the rights of a named interested party was not eliminated by the default judgment). The court concluded that "once [the insurer] named [the injured party] as a defendant in its action for declaratory judgment, and asked the court to interpret the insurance contract, the court possessed the power to declare the rights of any interested party before it," *id.* at 748, and "the injured party was entitled to defend against the declaratory action despite the insured's default," *id.* at 749. In reaching this conclusion, the court explained that the injured party is a proper party and entitled to notice of the declaratory judgment action and an opportunity to intervene. *Id.* at 748. The court reasoned that a default "does not bind a codefendant who appears and contests the litigation." *Id.* at 751 n.20 (quotation and citation omitted).

*Hayes* did not address the preclusive effect of a default judgment entered in one action against a policyholder on an injured third party in another action. *Hayes* is a case about standing, not preclusion. "*Hayes* holds that, when a liability insurer brings a declaratory judgment action naming the injured party as a defendant, the injured party has standing to contest the coverage." *Alterra Excess & Surplus Ins. Co. v. Excel Title Agency, LLC*, Case No. 13-cv-11672, 2014 WL 12656720, at *2 (E.D. Mich. Jan. 21, 2014). In contrast, the Group was not a named defendant at the time the default judgment was entered against Sturgis in the Michigan Action. Although

the Group had been given notice and had moved to intervene, it had not yet been allowed to intervene. Intervention was not granted until after the coverage issue was decided against Sturgis. Even so, the Group did contest the default in its Motion to Set Aside Default, and its motion was denied. This is even more reason that the preclusive effects of the decision in the Michigan Action apply to the Group in this case. Either way, the Group loses here.

The Court determines that under Michigan law, the Default Judgment entered against Sturgis in the Michigan Action precludes the Group's claims against the Defendant Insurers in the instant action seeking coverage under the very same policies at issue in the Michigan Action. For this reason, the Group's Amended Complaint has failed to state a claim upon which relief can be granted and should be dismissed.

Even if res judicata were inapplicable, collateral estoppel prevents the Group from relitigating whether the Defendant Insurers' policies provide coverage to Sturgis. Collateral estoppel applies where: "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue'; and (3) 'there must be mutuality of estoppel.'" *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845–46 (Mich. 2004) (footnotes omitted) (quoting *Storey v. Meijer, Inc.,* 429 N.W.2d 169, 171 n.3 (Mich. 1988)). Mutuality of estoppel requires that the party taking advantage of the earlier judgment "must have been a party, or in privy to a party, in the previous action." *Id.* at 846 (quotation marks and citation omitted).

Under Michigan law, when a party has actual notice that a coverage issue is being litigated and could have intervened, "collateral estoppel prevents [that party] from being entitled to retrial of the coverage issue." *Wilcox v. Sealey,* 346 N.W.2d 889, 894 (Mich. Ct. App. 1984); *see also Employers Mut. Cas. Co. v. Reilly Plating Co.*, No. 08-12145, 2008 WL 4757315, at *3 (E.D. Mich. Oct. 29, 2008) ("[U]nder Michigan's rather unusual rules of collateral estoppel, an injured person who has knowledge of a declaratory judgment action against his tortfeasor but does not intervene is bound by the judgment.") (citing *Wilcox*). In other words, as Amerisure explains: "*Wilcox* stands for the proposition that a claimant is bound by the results of a declaratory judgment against an insured, and in favor of an insurer, where the claimant was aware of those proceedings and failed to take timely steps to intervene in the coverage action prior to judgment." (Amerisure's Reply Br. 3, ECF No. 152.)

The Group, however, argues that *Wilcox* is distinguishable on three bases: (1) there was no first-filed, parallel proceeding between the injured third party and the insurer in that case; (2) the party that waived its rights never sought to intervene; and (3) the issue of coverage was decided after trial, not through a default judgment. (Pl.'s Resp. Opp'n 7, ECF No. 148.) None of these differences matter. Which action was filed first is not controlling for purposes of preclusion. *See* W*estwood Chem. Co.*, 656 F.2d at 1228 ("It makes no difference that the first action to reach a final judgment was the second action filed[.]"). The Group had sufficient notice of the Insurers' action against Sturgis and did seek to intervene; however, its failure to follow the Circuit Court procedural rules prevented its motion to intervene from being heard

before judgment was entered. And a default judgment "is just as conclusive an adjudication and as binding upon the parties" as a judgment entered after trial. *See Perry & Derrick Co.*, 180 N.W.2d at 485–86.

Like the insured in *Wilcox*, the Group had actual knowledge of the Michigan Action by the Insurers against its alleged tortfeasor Sturgis, and the Group could have taken appropriate and timely steps[6] to intervene and to protect its interests before the Default Judgment was entered. Even assuming that Michigan law would require the Group to have been a party to the Michigan Action at the time the Default Judgment was entered for res judicata to apply, collateral estoppel nonetheless defeats the Group's claims against the Defendant Insurers in the instant action.

Moreover, the Group's claims should be dismissed on the alternative grounds urged by Amerisure. The Group maintains that Indiana substantive law applies to the policies. As then District Judge David F. Hamilton explained:

> Under Indiana law, an insurer or a third party may file a declaratory judgment action to clarify the insurer's coverage obligations with respect to a loss by a policy holder. It is possible, and sometimes may even be preferable, to file such an action before the underlying claim against the policy holder has been resolved. As in this case, the third party victim of an insured's (alleged) wrongdoing may have an interest in determining the extent of the insurance coverage before she expends time, money, and resources obtaining a judgment against an insured from whom she has little chance of collecting directly.

*Selective Ins. Co. of the Se. v. Cagnoni Dev., LLC*, No. 1:06-cv-0760-DFH-TAB, 2008 WL 126950, at *5 (S.D. Ind. Jan. 10, 2008) (citations omitted). An injured third party may seek a declaration of insurance coverage when an insurer denies coverage. *See*

---

[6] This would have included noticing its motion to intervene for hearing and appearing at the hearing on the motion for default judgment.

*Wilson v. Cont'l Cas. Co.*, 778 N.E.2d 849, 852 (Ind. Ct. App. 2002) ("A plaintiff should be entitled to bring a declaratory action to determine whether the insurance carrier must indemnify its insured . . . ."). The Group is the injured third party of the alleged wrongs by Sturgis, the insured under the policies. Thus, the Group may seek a declaration of insurance coverage. That is what the Group is attempting to do in this action.

However, the Seventh Circuit has determined that under Indiana law, "an injured plaintiff 'stands in the legal shoes' of the insured, and his claim can be no greater than the insured's claim would be against his own insurer under the insurance policy." *Wolverine Mut. Ins. v. Vance*, 325 F.3d 939, 944 (7th Cir. 2003) (citations omitted). The Oakland County Circuit Court has already conclusively determined that the Environmental Matters, including the instant action, do not fall within the insuring agreements of the Policies, are excluded under the Policies' pollution exclusions and expected or intended exclusions, and that there is no coverage for Sturgis under the Policies for the Underlying Lawsuit and this action. Therefore, assuming *arguendo* that Indiana law does apply, the Seventh Circuit's decision in *Wolverine* controls and the Group has no greater claim under the policies than Sturgis has, and based on the Default Judgment, Sturgis has none.

If Indiana law does not apply, application of Michigan law leads to the same result. *See City of South Bend, v. Century Indem. Co.*, 821 N.E.2d 5, 10 (Ind. Ct. App.), *clarified on reh'g by* 824 N.E.2d 794 (Ind. Ct. App. 2005), *infra.* Michigan does not allow direct actions by a third party against an insurer. MICH. COMP. LAWS. § 500.3030;

*Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 221 (7th Cir. 1996) ("[E]xcept in direct-action states, of which Michigan is not one, . . . a contract of liability insurance is not enforceable by the victim of the insured's tort under a third party beneficiary theory.") (citing *Allstate Ins. Co. v. Keillor*, 476 N.W.2d 453, 454–55 (Mich. Ct. App. 1991), *rev'd on other grounds*, 499 N.W.2d 743 (Mich. 1993). Thus, under Michigan law, as under Indiana law, an injured third party "stands in the legal shoes" of the insured and can make no greater claim to insurance proceeds than can be made by the insured.[7]

Even if collateral estoppel does not preclude the Group's action, because the Defendant Insurers' contractual obligations run only to Sturgis, the Group "can only recover insurance proceeds insofar as [its] rights derive from [Sturgis's] rights under [the policies]." *Wolverine*, 325 F.3d at 944. In other words, the Group is entitled to recover from the Defendant Insurers under the insurance policies for Sturgis's environmental liabilities only if Sturgis is entitled to recover from the Defendant Insurers under the policies. The Oakland County Circuit Court held that insurers' policies did not provide coverage to Sturgis for the Underlying Lawsuit or the instant action. Sturgis did not appeal the Circuit Court's judgment and cannot relitigate that matter. Therefore, the Group, standing in Sturgis's "legal shoes" may not seek a determination that there is coverage. Nor may the Group recover any proceeds from the insurance policies.

---

[7] The Group failed to respond to these alternative grounds for dismissal. "Failure to respond to an argument … results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *see also* W*ojtas v. Capital Guardian Tr. Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (explaining that the plaintiff's "failure to offer any opposition to [the defendant's] . . . argument constituted a waiver"). The Court could rely on this waiver alone and dismiss the Group's claims. However, Amerisure's alternative argument prevails on the merits too.

The Group cites *Century Indemnity Co.*, 821 N.E.2d at 10, arguing that it may sue the insurers of the defunct Sturgis. That case recognized a narrow exception to the prohibition on direct actions by third parties against insurers: "actions seeking only a declaration of the insurer's responsibilities should the allegations regarding the insured's conduct be proven." *Id.* at 11. Even if the Group proves its allegations against Sturgis in the Underlying Lawsuit, the Oakland County Circuit Court has already decided that there is no coverage for Sturgis under the policies.

As an injured third party, the Group "stands in the legal shoes" of the insured, Sturgis, and the Group's claim can be no greater than Sturgis's claim would be against its own insurers under the insurance policies. It has already been decided that Sturgis has no claim against the Insurers under the policies. Therefore, the Group has no claim against the Insurers under the policies either. The Group's claims in this instant action must be dismissed for failure to state a claim.

Oral argument is unnecessary. Therefore, Defendants' Motion for Oral Argument on Travelers' Motion to Enforce a Prior Judgment and Dismiss the Amended Complaint under Rule 12(b)(6) (ECF No. 138) is **denied**.

Defendant Everest National Insurance Company's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 141) and Defendants' Motion to Enforce a Prior Judgment and Dismiss the Amended Complaint Under Rule 12(b)(6) (ECF No. 136), in which all Defendants, except Ohio Casualty have joined, is **granted**.

### III. Conclusion

For the foregoing reasons, the motion for oral argument (ECF No. 138) is **denied** and the motions to enforce prior judgment and dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim (ECF Nos. 136 & 141) are **granted**. This action will be **dismissed with prejudice** as to all defendants except Ohio Casualty.

However, as noted, Ohio Casualty did not join in either motion to dismiss. Ohio Casualty is **allowed until March 17, 2020** to join in the motions to dismiss or otherwise show cause why the claims against it should be dismissed. The Group is **allowed until March 31, 2020** within which to respond. Ohio Casualty is **allowed until April 07, 2020** to file a reply.

Entry of final judgment will await disposition of the claims against Ohio Casualty or further order of the Court.

**SO ORDERED.**

Date: 2/28/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to all parties
of record via CM/ECF.